REGAN, Judge.
Plaintiffs, Mr. and Mrs. Roland Druilhet, instituted this suit against the defendants, Reed L. Labiche,[1] the owner of a Ford Panel Truck, and his liability insurer, Indemnity Insurance Company of North America, endeavoring to recover the sum of $50,000 representing damages for the personal injuries suffered by Mrs. Druilhet and $2,-602.38, for property damage, medical and other expenses incurred by Roland Druilhet as the ultimate result of an accident which occurred in the intersection of Dryades and Sixth Streets in the City of New Orleans, on June 22, 1954, at about '8:15 a. m., when Mrs. Druilhet, who was operating the family car, was struck by Labiche’s truck which was being driven by his employee, Jerry Boudreaux.
Defendants answered and denied that Boudreaux was guilty of any negligence in the premises and, in the alternative, pleaded the contributory negligence of Mrs. Druilhet.
From a judgment in favor of Mrs. Druilhet in the amount of $4,000 for personal injuries and in favor of her husband for property damage, medical and other expenses in the sum of $2,102.38, defendants have prosecuted this appeal. Plaintiffs have answered the appeal and requested an increase in the amount of the judgment in favor of Mrs. Druilhet from $4,000 to $15,-000 and in favor of Roland Druilhet from $2,102.38 to $2,602.38, or an additional $500 for future medical expenses.
In order to circumvent repetitious designation of parties plaintiff and defendant, we shall hereinafter apply the appellation plaintiff to Mrs. Druilhet and defendant to Boudreaux, the operator of the truck.
The record, as usual, reveals relatively simple but controversial facts always present in an intersectional collision. Plaintiff related that on June 22, 1954, at about 8:15 a. m., she was operating her Chevrolet automobile, at a speed of approximately twenty miles per hour, in Dryades Street[2] in the general direction of Canal Street. When she reached the intersection of Sixth Street[3], she decelerated to about fifteen miles per hour, glanced to her left and noticed a truck approaching a “safe distance away.” She then looked to her right before entering the intersection. She had traversed the center thereof when her attention was attracted by “the screeching of brakes”, which caused her to turn her head in time to see the right front fender of defendant’s truck collide with the left front portion of her car.
Jerry Boudreaux, age twenty-four, asserted that moments before the accident he was operating his vehicle to the left of center in the roadway of Sixth Street, moving towards the river at a speed of approximately twenty miles per hour[4] and as he neared the intersection, he decelerated to twelve or thirteen miles per hour. A large tree and a building was located on the corner of the intersection to the defendant’s right, which obstructed his vision into Dryades Street and which placed that corner in the category of what has been designated in our jurisprudence as a “blind corner.” He then more pertinently explained “I had my foot riding the brake going to the corner, I was slowing down. When I got to the building, I couldn’t see too good. I had to get almost out into the intersection before I could see anything. I kept holding my foot on the brake. The tree — I had to get a little farther. By the time I was in the intersection * * * and I was looking around * * * I saw Mrs. Druilhet’s car coming at me. That is when I jammed my brake * * *. She was on me already hitting me from the side. *62 * * * It was a heavy blow, it swung my truck completely around. * * * facing straight down Dryades.” Pie fixed the location of the collision “a little to the left of the center of Sixth Street and about in the center of Dryadeshe then endeavored to explain that when he first noticed plaintiff’s car it was approximately twenty-five to thirty feet from Sixth Street and that his truck, at that moment, was three or four feet removed from the point of impact. In response to interrogation he laboriously asserted that he could not explain nor account for the fact that he had testified that his truck travelled only three or four feet while plaintiff’s vehicle travelled twenty-five or thirty feet to the point of impact, when it was conceded that “skid marks” impressed by the tires of defendant’s truck upon the surface of the roadway of Sixth Street measured twenty-eight feet, therefore, he was at least that far from the point of impact when he first noticed the plaintiff’s car.
There was only one disinterested eyewitness to the accident, Clinton Fuller, who resided in Dryades near the corner of Sixth Street. He testified, on that morning, he was standing near the corner and observed the approach of both vehicles before the accident occurred. He explained that the plaintiff entered the intersection first at a speed of about fifteen or twenty miles per hour, and had traversed two-thirds thereof when defendant’s truck, moving at a speed of between twenty-five and thirty-five miles per hour, suddenly applied the brakes thereof, causing it to “skid” into plaintiff’s automobile; both vehicles stopped on a forty-five degree angle facing into Dryades Street.
Walter J. Vollenweider, brake inspector employed by the New Orleans Police Department, testified that he, together with Officers Wilson and Gustafson, arrived at the scene of the accident fifteen minutes after its occurrence and predicated upon the “skidmarks” of twenty-eight feet impressed by the tires of defendant’s truck upon 1he roadway of Sixth Street, he calculated its speed to be twenty-five or thirty miles per hour; however, he carefully pointed out that the “skidmarks” would have been in excess of twenty-eight feet if the collision had not stopped the forward movement of the truck and, therefore, any addition to the above length of the skid-marks would indicate that defendant’s vehicle was moving at a greater rate of speed than twenty-five or thirty miles per hour.
Plaintiff contends that she was operating her car in a careful manner and insists that the sole cause of the collision was the negligence of defendant in operating the truck at an excessive, unlawful rate of speed; his failure to maintain a proper lookout and to accord the vehicle approaching the intersection from his right the right-of-way.
Defendant, in his endeavor to resist the foregoing assertions, maintains, in substance, that the plaintiff was negligent in driving her car at an excessive rate of speed and in failing to maintain both a proper lookout and control of her vehicle.
We have carefully analyzed the actions of the plaintiff and are of the opinion, as was the trial judge, that she was entirely free of negligence. The only evidence appearing in the record relating to the speed of plaintiff’s vehicle, fixes it between fifteen and twenty miles per hour, obviously plaintiff was not operating her vehicle at an excessive rate of speed as defendant maintained. The record likewise reveals that the plaintiff was carefully driving in the most favored street and only entered the intersection, from defendant’s right, after observing his truck “a safe distance away.” At one point in plaintiff’s testimony, under cross-examination, she was confronted with a sketch of the intersection and, in response to interrogation by defendant’s counsel, asserted that she was moving fifteen miles per hour when she arrived at a point marked “x” [5] on the sketch and that the defendant’s truck was more than one half block removed from the intersection at that moment. A fair evaluation of this isolated testimony convinces us that the plaintiff was not thoroughly oriented to the sketch when she *63 was interrogated as to the relative position of the vehicles a split second before the accident occurred and, for that reason, we are not impressed thereby. On direct and cross examination she said three times that when she reached the intersection she noticed the truck approaching “a safe distance away.”
Therefore, the only question posed for our consideration is one of fact and that is whether defendant’s negligence was the proximate cause of the accident?
The trial judge, in his written reasons for judgment, resolved the answer to this question in the affirmative and our careful examination of this evidence fails to disclose any reversible error in his conclusion.
The whole tenor of the record reflects the very evident fact that the defendant drove into this heavily trafficked intersection at an excessive rate of speed without ever having observed, from his right,[6] the entrance therein of plaintiff’s vehicle until it was too late for him, by virtue of a sudden application of the brakes, to avoid the collision. Therefore, defendant’s negligence, in this respect, was the proximate cause of the accident.
 We believe that the award by the trial judge of $2,102.38 to Roland Druilhet covering the doctor and hospital bills, Mrs. Druilhet’s loss of earnings and property damage incurred by the family automobile is eminently correct. He properly disallowed a claim of $500 for future medical treatment since the plaintiffs failed to offer sufficient proof to substantiate the validity thereof.
With respect to the personal injuries incurred by the plaintiff as a result of the collision, the record reveals that she was severely injured. Prior to the accident she was a normal, healthy person, in good phy-
sical condition commensurate with her age.[7] The record further reflects that following the collision she was unable to move and was carried from her automobile to an ambulance and then removed to the Touro Infirmary. Upon arrival there a sedative was administered to allay her pain. She was hospitalized for twenty-three days and the pain was so excruciating that she was under sedation most of the time. When she returned home she was confined to bed for two weeks and continued to suffer and was unable to sleep without sedatives.
In consequence of her injuries she was unable to resume her employment from June 22, 1954 until March 15, 1955, when she was able to work only for short periods and then earned less than one-half [8] of her former wages. It is now painful for her to perform any housework and she reiterated that she has never been free of pain since the accident.
The attending physician, Dr. James T. McQuitty, testified that when he first visited Mrs. Druilhet, she was complaining of severe pain associated with her chest, abdomen, pelvic region and muscles. An examination by him and of the X-rays which had been taken of plaintiff’s injuries revealed that she suffered fractures of the 3rd, 4th and 5th ribs of the posterior axillary line; fractures of the 3rd, 4th, 5th and 6th ribs [9] in the mid axillary line, together with a fracture of the sacrum just below the iliac joint; a fracture of the superior margin of the pubis; multiple bruises, abrasions and contusions of the back, side, lower extremities, the left foot and shock.
Dr. McQuitty stated that fractures of the ribs are very painful because they cannot be immobilized since they are essential structures in respiration and the ribs necessarily move during the course of breathing. He also asserted because of the injury to the sacrum and pubic bone that she will *64 suffer pain while walking or moving generally and in her marital relations.
She possessed a mild arthritic complaint prior to the accident and as a result of the trauma that condition is now aggravated which causes her to suffer continuous pain. On the day of the trial plaintiff had not as yet been discharged from treatment by her physician.
In consideration of the foregoing injuries we are of the opinion that the $4,-000 awarded Mrs. Druilhet by the court below is inadequate and that the quantum should be increased to the sum of $7,500 which we believe to be adequate only insofar as money may make it so.
For the reasons assigned the judgment appealed from is amended by increasing the amount awarded Mrs. Druilhet from the sum of $4,000 to $7,500. In all other respects the judgment appealed from is affirmed.
Amended and affirmed.

. He conducted his business under the trade name of L. & S. Electric Company.

. A one-way paved street.

. A two-way black topped street.

.Plaintiff disputes this speed and insists that defendant’s truck was moving between thirty-five and fifty-five miles per hour.

. Dryades Street entrance to intersection.

.LSA-R.S. 32:237 provides that when “two vehicles approach or enter an interaction at approximately the same time, T^e driver approaching from the right shall have the right of way.”

. She was 52 years of age at the time of the accident.

. $80 per month. She had formerly earned $170 per month.

. The fractures of throe of the ribs were multiple;